## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

**JOHN ZINK COMPANY, LLC,**

      **Plaintiff,**

v.                                                          **Case No. 22-CV-525-JFH-CDL**

**TODD M. ROBERTSON,**

      **Defendant.**

## OPINION AND ORDER

This matter is before the Court on the Motion for Temporary Restraining Order and Preliminary Injunction ("Motion") filed by Plaintiff John Zink Company, LLC ("John Zink"). Dkt. No. 6. For the reasons set forth below, the Motion is GRANTED.

## BACKGROUND

The Court draws the following facts from the record before it, which are undisputed for purposes of the instant Motion. John Zink produces, installs, and services emissions-control and clean-air combustion systems for its clients in the global petrochemical and refining industries. Dkt. No. 2 at 3-4; Dkt. No. 6-1 at 2. Defendant Todd M. Robertson ("Robertson") worked for John Zink as a service technician from May 2006 through October 2022. Dkt. No. 6-1; Dkt. No. 6-2; Dkt. No. 6-3 at 2. According to John Zink, through his employment, Robertson had access to the company's trade secrets and other confidential and proprietary information. Dkt. No. 6-2; Dkt. No. 6-3 at 1; Dkt. No. 6-4.

Robertson terminated his employment with John Zink, effective October 4, 2022, and took a substantially similar position with one of the company's direct competitors. On October 3, 2022, the day before his employment with John Zink ended, Robertson downloaded 944 files from his John Zink computer to a USB device. Dkt. No. 6-5 at 3. He also exported documents from his

OneDrive to a Zip file and copied those documents to the USB device.  *Id.*  According to John Zink, the materials copied to the USB device contained trade secrets as well as confidential and proprietary data.  Dkt. No. 6-3 at 3; Dkt. No. 6-5 at 3-4.  According to John Zink, the duplication of its files was unauthorized and was both a breach of the Employee Confidentiality, Invention Assignment, and Non-Solicitation Agreement Robertson signed in connection with his hiring (the "Robertson Agreement") and a violation of company policy.  Dkt. No. 6-2; Dkt. No. 6-3 at 3; Dkt. No. 6-5 at 1.  John Zink believes that Robertson intends to use the materials to solicit John Zink's established customers and employees and to provide his new employer an unfair competitive advantage in the marketplace.  Dkt. No. 6-3.

John Zink did not discover the unauthorized duplication of its files until October 27, 2022. Dkt. No. 6-5 at 3.  Thereafter, it undertook a more extensive investigation.  On November 17, 2022, John Zink's counsel sent a letter to Robertson demanding that he:  (1) stop any actions or efforts to use or disclose John Zink's trade secrets, confidential information, or proprietary information; (2) immediately return any property of John Zink to its office and allow for a forensic examination of all devices on which this property is stored including his cell phone, laptop, external hard drive or any other device, and for a forensic review of any cloud based storage accounts and email accounts on which this property is stored; (3) provide a list detailing his use and dissemination of John Zink's trade secrets, confidential information, proprietary information, or any other property of John Zink; (4) refrain from any actions or efforts to solicit established customers of John Zink; (5) refrain from any actions or efforts to solicit current employees of John Zink; and (6) stop any further conduct in breach of his obligations to John Zink.  Dkt. No. 6-6 at 4.

In the letter, John Zink advised Robertson that it would take necessary legal action to protect its business. Having advised Robertson of potential litigation regarding the duplicated materials, John Zink issued a demand to preserve evidence relevant to its claims, requesting that Robertson preserve all hard-copy information and electronically stored information relating to Robertson's employment with John Zink, the unauthorized acquisition of John Zink trade secrets, confidential information, or proprietary information, and any other wrongful acts committed by Robertson. According to John Zink, it did not receive a response to the letter. Dkt. No. 6 at 15.

On December 2, 2022, John Zink filed this action against Robertson, asserting claims for: (1) misappropriation of trade secrets under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 ("DTSA"); (2) misappropriation of trade secrets under the Oklahoma Uniform Trade Secrets Act, Okla. Stat. tit. 78 §§ 85-95 ("OUTSA"); (3) misappropriation of intangible property; (4) breach of contract; and (5) breach of fiduciary duty.

John Zink also filed the instant Motion for preliminary injunctive relief, requesting that the Court order Robertson to: (1) preserve for use in this matter all documents (in hard copy or electronic format) and all electronic devices, drives, cloud drives, computers, memory sticks or other machines upon which John Zink's property now resides or ever resided; (2) produce to John Zink for examination by an independent computer forensics expert within three days of the date of service of the Court's Order granting this Motion all electronic devices, drives, computers, memory sticks or other machines that Robertson[1] has used at any time since October 4, 2022, or upon which John Zink's property now resides or ever resided, as well as the credentials required

---

[1] The Motion requests production of all devices and machines used by "Wilson." Dkt. No. 6 at 28. However, based on the information contained in the record, the Court presumes that this is a typographical error and that John Zink intended to request production of all devices and machines used by Robertson.

3

to access all cloud drives or accounts that Robertson has accessed or used at any time since October 4, 2022, or upon which John Zink property now resides or ever resided; (3) immediately return to John Zink all John Zink property, including but not limited to hard copy documents, in his possession, custody, or control; (4) refrain, cease, and desist immediately from violating the non-disclosure or non-solicitation obligations under the Robertson Agreement by disclosing Plaintiff's Confidential Information or Trade Secrets, at any time, or by soliciting, directly or indirectly, Plaintiff's established customers or employees until no earlier than October 4, 2024; and (5) refrain, cease, and desist immediately from using or disclosing any trade secrets or confidential information belonging to John Zink.  Dkt. No. 6 at 27-28.

## DISCUSSION

### I.    Jurisdiction

A federal court may issue injunctive relief if it has subject matter jurisdiction over the claim and personal jurisdiction over the parties.  *See Thomas v. Bolls*, No. 18-CV-00692-GPG, 2018 WL 9489245, at *2 (D. Colo. May 16, 2018).

### A.  Subject Matter Jurisdiction

There are two statutory bases for federal subject-matter jurisdiction: diversity jurisdiction under 28 U.S.C. § 1332 and federal-question jurisdiction under 28 U.S.C. § 1331.  Federal-question jurisdiction exists for all claims "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.  "A case arises under federal law if its well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Nicodemus v. Union Pac. Corp.*, 318 F.3d 1231, 1235–36 (10th Cir. 2003), 440 F.3d 1227 (10th Cir. 2006) (internal quotation marks and citation omitted).  Thus, to find jurisdiction under § 1331, two conditions

4

must be satisfied.  First, a question of federal law must appear on the face of the plaintiff's well-pleaded complaint.  *Rice v. Office of Servicemembers' Group Life Ins.,* 260 F.3d 1240, 1245 (10th Cir. 2001). Second, the plaintiff's cause of action must either be:  (1) created by federal law, or (2) if it is a state-created cause of action, "its resolution must necessarily turn on a substantial question of federal law." *Id.* (citing *Merrell Dow Pharms. Inc. v. Thompson,* 478 U.S. 804, 808, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986)).

Here, in asserting a claim for misappropriation of trade secrets under the DTSA, John Zink has satisfied both conditions necessary to satisfy the jurisdictional requirements of § 1331. Because the Court has original jurisdiction over John Zink's DTSA claim, it may exercise supplemental jurisdiction over the related claims asserted in John Zink's complaint, which arise under state law.  *See Price v. Wolford*, 608 F.3d 698, 702 (10th Cir. 2010) ("Once a district court has jurisdiction, additional claims and parties can be added under the supplemental-jurisdiction statute, 28 U.S.C. § 1367(a), which grants the district courts jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.") (internal quotation marks and citation omitted)).

**B.  Personal Jurisdiction**

"To exercise jurisdiction in harmony with due process, defendant[ ] must have minimum contacts with the forum state, such that having to defend a lawsuit there would not offend traditional notions of fair play and substantial justice." *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011) (brackets and internal quotation marks omitted).  The minimum contacts may give way to specific or general jurisdiction.  *See Intercon, Inc. v. Bell Atl. Internet Sols., Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000).  General jurisdiction exists when the defendant's contacts with the

forum are "so continuous and systematic as to render [it] essentially at home in the forum State." *Fireman's Fund Ins. Co. v. Thyssen Min. Const. of Canada, Ltd.*, 703 F.3d 488, 493 (10th Cir. 2012) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

At the pleading stage, a plaintiff need only establish a prima facie showing of personal jurisdiction. *Kozeny*, 19 F. App'x at 822. Here, John Zink alleges that the Court has personal jurisdiction over Robertson because he resides in the State of Oklahoma. Dkt. No. 2 at 2. This is supported by the summons issued to Robertson in this matter, which indicates that Robertson resides in Broken Arrow, Oklahoma. Dkt. No. 9: Dkt. No. 10. John Zink also claims that a substantial part of the events giving rise to its claims occurred within the Northern District of Oklahoma. Dkt. No. 2 at 2. This is supported by evidence submitted with its Motion, including Robertson's resume, which indicates that Robertson worked for John Zink in Tulsa, Oklahoma from 2006 through his resignation in 2022. Dkt. No. 6-1 at 2-3. Finally, John Zink argues that the parties agreed to submit to the jurisdiction of this Court. Dkt. No. 2 at 2. This is supported by the Robertson Agreement, which provides that "any lawsuit filed with respect to [the agreement] shall be filed in the State or Federal courts located in Tulsa County, Oklahoma." Dkt. No. 6-2 at 3. Based on the foregoing, the Court concludes that John Zink has made a prima facie showing that the Court has personal jurisdiction over Robertson.

## II.     Motion for Temporary Restraining Order and Preliminary Injunction

Under Rule 65 of the Federal Rules of Civil Procedure, a party seeking preliminary injunctive relief through a TRO or a preliminary injunction must show that: "(1) the movant is substantially likely to succeed on the merits; (2) the movant will suffer irreparable injury if the injunction is denied; (3) the movant's threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest."

*DTC Energy Grp., Inc. v. Hirschfeld*, 912 F.3d 1263, 1270 (10th Cir. 2018) (internal quotation marks and citation omitted).   The primary goal of preliminary injunctive relief is to preserve the pre-trial status quo.   *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009).   In considering a motion for such relief, the Court determines the status quo by looking "to the reality of the existing status and relationship between the parties and not solely to the parties' legal rights." *Schrier v. Univ. of Co.*, 427 F.3d 1253, 1260 (10th Cir. 2005) (internal quotation marks and citation omitted).

"Preliminary injunctions are typically prohibitory in the sense that they prohibit the defendant from doing something."   *Trial Laws. Coll. v. Gerry Spence Trial Laws. Coll. at Thunderhead Ranch*, 23 F.4th 1262, 1274–75 (10th Cir. 2022) (internal quotation marks and citation omitted).   Injunctions that affirmatively require the nonmoving party to take action before a trial on the merits are considered mandatory.   *Id.*   Mandatory injunctions are typically disfavored and require the movant to make a heightened showing of the four preliminary injunction factors. *RoDa Drilling Co.*, 552 F.3d at 1209.   When the moving party demonstrates that "the exigencies of the case require extraordinary interim relief," the court may grant a mandatory injunction upon satisfaction of the heightened burden.   *Id.*

Here, John Zink's requests for:  (a) the preservation of evidence; ; (b) compliance with the nondisclosure and non-solicitation clauses of the Robertson Agreement; and (c) the prohibition of disclosure or use of confidential and proprietary information, are prohibitory.   However, its requests for Robertson to return confidential and proprietary information and produce his electronic devices and data storage devices for examination by an independent computer forensics expert are mandatory, in that they require Robertson to take affirmative action.   To obtain such

7

relief, John Zink must make a heightened showing of the preliminary injunction factors and demonstrate that it is justified by the exigencies of the case. *RoDa Drilling Co.*, 552 F.3d at 1209.

### A.      Likelihood of Success on the Merits

Because injunctive relief can be granted upon a showing of success on any particular claim, if the Court determines that Plaintiff is likely to succeed on the merits of his DTSA claim it need not make a finding on his other claims. *See Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1232 (11th Cir. 2005) ("To obtain temporary injunctive relief, [the movant] must show a substantial likelihood of success on at least one claim.").

### 1.      Misappropriation of Trade Secrets Under the DTSA

To succeed on the merits of a misappropriation claim under the DTSA, a plaintiff must establish:  (1) the existence of a trade secret that relates to a product or service used in, or intended for use in, interstate or foreign commerce; (2) the acquisition of the trade secret, or the use or disclosure of the trade secret without consent; and (3) the person acquiring, using, or disclosing the trade secret knew or had reason to know that the trade secret was acquired by improper means. *Video Gaming Techs., Inc. v. Castle Hill Studios LLC*, No. 17-CV-454-GKF-JFJ, 2018 WL 3437083, at *4 (N.D. Okla. July 17, 2018); *see* 18 U.S.C. § 1836(b)(1); 18 U.S.C. § 1839; *see also Arctic Energy Servs., LLC v. Neal*, No. 18-CV-00108-PAB-KLM, 2018 WL 1010939, at *2 (D. Colo. Feb. 22, 2018).  Under the DTSA, "[a]n owner of a trade secret that is misappropriated may bring a civil action under this subsection if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce."  18 U.S.C. § 1836(b).

### a.      The Existence of Trade Secrets Relating to Products or Services Intended for Interstate or Foreign Commerce

The DTSA defines a "trade secret" as:  (a) any financial, business, scientific, technical, economic, or engineering information; (b) that the owner has taken reasonable measures to keep

secret; and (c) that derives independent economic value from not being generally known to, or readily ascertainable through proper means by, another person.  18 U.S.C. § 1839(3).

John Zink submitted copies of Robertson's resume and the Robertson Agreement, which demonstrate that during the approximately sixteen (16) years that Robertson worked for the company, he gained "an appreciated understanding of the petrochemical and refining industries," [Dkt. No. 6-1 at 2] and that, in his role as a service technician specializing in thermal oxidizers, Robertson had access to confidential and proprietary information including information regarding the company's "products, processes, services, research, development, manufacturing, purchasing, accounting, legal matters, engineering, marketing, distribution, construction, merchandising, selling, soliciting, or pricing policies, and information concerning or belonging to the company's customers" [Dkt. No. 6-1 at 2; Dkt. No. 6-2 at 2].  This is sufficient to show that the information to which Robertson had access is within the scope of the DTSA's protection.

John Zink submitted an affidavit by Brad Puetz ("Puetz"), the IT Director of Koch Engineered Solutions, John Zink's parent company.  Dkt. No. 6-4.  Puetz states that John Zink "invests substantial time, money, and other resources" developing its trade secrets and protecting them "from dissemination to competitors and those outside John Zink."  Dkt. No. 6-4 at 2. According to Puetz, the measures taken to protect the company's confidential and proprietary information include but are not limited to:  (1) utilizing advanced threat management processes to monitor internal and external threats to the company's networks; (2) encrypting data on company-owned devices; (3) training users of the company's computers and networks regarding their confidentiality obligations; (4) implementation of firewalls and application security protections; (5) promulgating confidentiality and information security policies and requiring employees to acknowledge and agree to abide by such policies through agreements such as the Robertson

Agreement; (6) taking reasonable measures to limit the disclosure and distribution of such information to employees on a need-to-know basis; (7) requiring that all of the company's information be saved on password-protected devices, networks, and/or third-party platforms with adequate security protocols; and (8) utilizing a user termination protocol that rescinds user access to the company's networks and third-party platforms upon a user's termination from employment. *Id.* at 2-3.

The Robertson Agreement included provisions defining "trade secrets," "confidential information," and "proprietary information" to include:

> any formula, pattern, device, or compilation of information, which is used by the [c]ompany in its business and which gives it the opportunity to obtain an advantage over competitors who do not have access to the [c]ompany's information, where the information is not generally known in the relevant trade or industry, which is disclosed to, discovered or known to me as a consequence of my employment with the [c]ompany, including information concerning the [c]ompany's products, processes, services, research, development, manufacturing, purchasing, accounting, legal matters, engineering, marketing, distribution, construction, merchandising, selling, soliciting, or pricing policies, and information concerning or belonging to the [c]ompany's customers, regardless of whether the information is in written or unwritten form, and including such information embodied in such forms as drawings, blueprints, plans, computer programs and printouts, diskettes or other electronic media, manuals, notebooks, compositions, reports, files, records, customer lists, accounting or financial statements or data, proposals, quotations, purchase orders or sales orders, formulae, processes, and machines and equipment.

Dkt. No. 6-2 at 2. With regard to such information, the Robertson Agreement required Robertson to maintain confidentiality and secrecy during and after his employment and forbade him from disclosing, duplicating, or using such information except as he was authorized in writing by the company. *Id.* The agreement further provided that:

> All drawings, blueprints, plans, computer programs and printouts, diskettes or other electronic media, manuals, notebooks, compositions, records, files, records, customer lists, accounting or financial statements or data, proposals, quotations, purchase orders or sales orders, formulae, processes, and other tangible items containing any trade secrets, confidential information or proprietary information of the [c]ompany or related to the business conducted by the [c]ompany, including

any such materials prepared by [Robertson] during [his] employment, and all copies and summaries of such information, are the sole and exclusive property of the [c]ompany and will be delivered to the [c]ompany at any time upon its request and, in any event, upon the termination of [Robertson]'s employment with the [c]ompany.

. . .

During [Robertson]'s employment with the [c]ompany, [he] will not publish articles, give talks or lectures or release any information in any form to the press or any trade associations with respect to the trade secrets, confidential information, proprietary information or any other information related to or concerning the [c]ompany's business, products or services, without the prior written approval of the [c]ompany.

*Id.* at 2-3.  This is sufficient to demonstrate that John Zink took reasonable measures to protect the confidential and proprietary information to which Robertson had access.

The Robertson Agreement indicates that as a service technician at John Zink, Robertson had access to information that the company used in its business not generally known in the industry, which gave the company the opportunity to obtain an advantage over competitors.  Dkt. No. 6-2 at 2.   John Zink also submitted an affidavit by its Operations VP, Jason Cardoza ("Cardoza"), in which he listed the types of files Robertson copied , including:  (1) inspection checklists; (2) inspection and test plans; (3) burner pictures; (4); burner performance data; (5) burner performance curves; (6) burner startup checklists; (7) wiring diagrams; (8) job specific data for John Zink customers; (9) job site pictures; and (10) burner drawings.  Dkt. No. 6-3 at 3. According to Cardoza, these types of files contain "confidential and proprietary data that would allow someone using them to design, inspect, commission, and troubleshoot John Zink products." Dkt. No. 6-3 at 3.  This is sufficient to demonstrate the information Robertson download and copied on October 3, 2022, had independent economic value derived from such information not being generally known in the industry or readily ascertainable through unauthorized access.

For these reasons, the Court concludes that the information accessed and duplicated by Robertson satisfies the DTSA's definition of "trade secrets."  And because John Zink operates globally and employed Robertson to provide support and training to international customers [Dkt. No. 2 at 3-4; Dkt. No. 6-1 at 2], the Court is also satisfied that the information accessed and duplicated by Robertson related to products or services intended for interstate or foreign commerce, and is therefore within the scope of the DTSA's protection.  *See* 18 U.S.C. § 1836(b).

### b.        Acquisition of the Trade Secret Without Consent

The DTSA requires the plaintiff to demonstrate that the trade secrets at issue were acquired without consent.  *Video Gaming Techs., Inc.*, No. 17-CV-454-GKF-JFJ, 2018 WL 3437083, at *4; *see* 18 U.S.C. § 1836(b)(1); 18 U.S.C. § 1839; *see also Arctic Energy Servs., LLC*, No. 18-CV-00108-PAB-KLM, 2018 WL 1010939, at *2.  Here, John Zink submitted the affidavit of its Discovery Technology Manager, Jeff Mosch ("Mosch").  Mosch states that after Robertson's resignation, he requested and analyzed logs from Device Control, an endpoint security feature deployed to John Zink computers to monitor and control USB activity.  Dkt. No. 6-5 at 3.  The Device Control log for the computer previously assigned to Robertson showed that Robertson inserted a USB device, specifically identified as USB\VID_05E3&PID_0749\000000001532, into the computer on multiple occasions.  *Id.*  The last insertion occurred on October 3, 2022.  *Id.*  That day, between 8:09 a.m. and 11:04 a.m. Robertson copied 944 files from his John Zink computer to the USB device.  *Id.*  At 3:00 p.m., Robertson exported documents from his OneDrive to a Zip file and copied the file to the USB device.  *Id.*

Under the Robertson Agreement, Robertson was prohibited from duplicating John Zink's trade secrets, confidential information, and proprietary information, except for purposes of his employment, unless the company gave him advance written authorization to do so.  Dkt. No. 6-2

at 2.  According to Mosch, Robertson had no legitimate business justification for copying company files to his USB device On October 3, 2022.  *Id.*  And according to Cordoza, Robertson was not authorized to duplicate the files.  Dkt. No. 6-3 at 3.  This evidence is sufficient to demonstrate that Robertson acquired trade secrets from John Zink without consent.

### c.        Knowledge that the Trade Secret was Acquired by Improper Means

The DTSA, requires the plaintiff to demonstrate that the person acquiring, using, or disclosing the trade secrets knew or had reason to know that the trade secrets were acquired by improper means.  *Video Gaming Techs., Inc.*, No. 17-CV-454-GKF-JFJ, 2018 WL 3437083, at *4; *see* 18 U.S.C. § 1836(b)(1); 18 U.S.C. § 1839; *see also Arctic Energy Servs., LLC*, No. 18-CV-00108-PAB-KLM, 2018 WL 1010939, at *2.  Here, the Court concludes that Robertson knew or had reason to know he acquired John Zink's trade secrets by improper means because of:  (1) John Zink's company policy expressly prohibiting the download of company files to personal removable storage devices [Dkt. No. 6-4 at 3; Dkt. No. 6-5 at 2]; (2) the training provided to John Zink employees regarding their confidentiality obligations [Dkt. No. 6-4 at 2]; (3) the provision of the Robertson Agreement prohibiting the disclosure, duplication, or use of John Zink's trade secrets, confidential information, and proprietary information for any nonemployment purpose, without written authorization [Dkt. No. 6-2 at 2]; (4) the fact that Robertson duplicated the files the day before his resignation took effect [Dkt. No. 6-5 at 2]; (5) Mosch's sworn statement that Robertson had no legitimate business purpose for duplicating the files that day [*Id.*]; and (6) Cordoza's sworn statement that Robertson was not authorized to access or copy the files [Dkt. No. 6-3].

Because the record evidence is sufficient to support each element of John Zink's claim for misappropriation of trade secrets under the DTSA, the Court finds that John Zink is likely to

succeed on the merits of that claim and this factor weighs heavily in favor of granting preliminary injunctive relief.

### B.    Irreparable Injury

"The purpose of a preliminary injunction is not to remedy past harm but to protect plaintiffs from irreparable injury that will surely result without their issuance." *DTC Energy*, 912 F.3d at 1270 (internal quotation marks and citation omitted).  The plaintiff must therefore demonstrate a "significant risk that he or she will experience harm that cannot be compensated after the fact by money damages." *Trial Laws. Coll.*, 23 F.4th at 1270–71 (internal quotation marks and citation omitted).  "A plaintiff suffers irreparable injury when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain." *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1156 (10th Cir. 2001) (citation omitted).  Courts have found that damage awards would be inadequate in a number of circumstances, especially in situations where:  (1) the award would be speculative because the damages are not easily quantifiable; and (2) where the injury is of a continuing nature.  Charles A. Wright and Arthur R. Miller, 11A FEDERAL PRACTICE & PROCEDURE § 2944 (3d ed., Apr. 2018) (collecting cases).

Here, John Zink argues that Robertson going to work for a competitor, after having acquired trade secrets and confidential information without authorization, presents a significant risk of irreparable injury.  Dkt. No. 6 at 24.  The Court agrees.  This presents a significant risk that John Zink will lose a competitive advantage, which is difficult to quantify or remedy with money damages.  *See Panorama Consulting Sols., LLC v. Armitage*, No. 17-CV-01400-RM, 2017 WL 11547493, at *1 (D. Colo. June 9, 2017) ("Providing plaintiff with monetary relief will simply not remedy the loss of competitive advantage plaintiff may lose from the alleged misappropriation of

its confidential information . . . when a defendant possesses trade secrets and is in position to use them, harm to the trade secret owner may be presumed") (internal quotation marks and citation omitted); *Prosonic Corp. v. Stafford*, 539 F. Supp. 2d 999, 1007 (S.D. Ohio 2008) (finding a threat of irreparable harm where a former employee, in possession of confidential trade secrets commenced working for the plaintiff's competitor in a substantially similar capacity to the position he held while employed by the plaintiff).  Therefore, this factor weighs heavily in favor of granting preliminary injunctive relief.

      **C.**     **Balance of Harms**

      The plaintiff must show that its threatened injury, absent injunctive relief, outweighs the opposing party's threatened injury under the injunction.  *Mrs. Fields Franchising, LLC v. MFGPC*, 941 F.3d 1221, 1232 (10th Cir. 2019).  Here, John Zink argues that it is unclear that Robertson will suffer any injury as a result of its requested relief, "given that the requested relief requires only that Robertson comply with the terms of the Robertson Agreement and applicable law."  Dkt. No. 6 at 26.  The Court agrees with respect to the prohibitory relief sought by John Zink.  *See Panorama Consulting Sols., LLC*, No. 17-CV-01400-RM, 2017 WL 11547493, at *1 (finding where former employees had trade secrets and were working for a competitor of the plaintiff, the balance of hardships weighed in the plaintiff's favor "not least because any temporary injunctive relief provided w[ould] merely require the relevant former employees and [their new employer] to comply with the law and/or observe their agreements with [the] plaintiff.").  Accordingly, this factor weighs heavily in favor of granting the prohibitory preliminary injunctive relief requested.

      As to the company's request for production of Robertson's electronic data storage devices, the Court finds that this relief goes beyond mere compliance with the Robertson Agreement and is mandatory in nature.  The Court will address the production of Robertson's electronic data

storage devices through discovery; this evidence will be preserved by Robertson as directed in this Order.

**D.      Public Interest**

The Court finds that the relief requested by John Zink is not adverse to the public interest. To the contrary, the public has a substantial interest in enforcing laws, such as the DTSA and corresponding state statutes.   The public also has a "substantial interest in protecting private property rights, including rights in trade secrets." *Loenbro Inspection, LLC v. Sommerfield*, No. 18-CV-01943-PAB, 2018 WL 3659396, at *2 (D. Colo. Aug. 2, 2018).

In sum, the Court finds that the preliminary injunction factors weigh heavily in favor of granting the prohibitory requested relief.  After copying John Zink's trade secrets, Robertson went to work for John Zink's competitor.  These circumstances demonstrate a threat of the disclosure and use John Zink's trade secrets to its competitor and a loss of a competitive advantage which cannot be measured by money damages alone.

**E.      BOND**

Where injunctive relief is granted, Rule 65(c) requires that the movant give "security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."   Fed. R. Civ. P. 65(c).   Therefore, before the Court grants injunctive relief, it must consider whether a bond is necessary.  *See Coquina Oil Corp. v. Transwestern Pipeline Co.*, 825 F.2d 1461, 1462 (10th Cir. 1987) (concluding that, where a trial court does not "contemplate the imposition of the bond, its order granting a preliminary injunction is unsupportable").   The Court has "wide discretion under Rule 65(c) in determining whether to require security" and may, therefore, impose no bond requirement.  *RoDa Drilling*, 552 F.3d at 1215.  Under the circumstances here, and because the Court is only granting prohibitory injunctive

relief at this time, it will not impose a bond requirement.  At the preliminary injunction hearing, the Court will take up the issue as to whether a bond requirement should be imposed to the extent that further injunctive relief is granted.

## CONCLUSION

IT IS THEREFORE ORDERED that the Motion for Temporary Restraining Order and Preliminary Injunction [Dkt. No. 6] is GRANTED IN PART such that Defendant Todd M. Robertson shall:

(1)     Refrain, cease, and desist immediately from using or disclosing any trade secrets or confidential information belonging to John Zink; and

(2)     Preserve for use in this matter all documents (in hard copy or electronic format) and all electronic devices, drives, cloud drives, computers, memory sticks or other machines upon which John Zink's property now resides or ever resided;

IT IS FURTHER ORDERED that this Temporary Restraining Order shall remain in full force and effect for fourteen (14) days unless otherwise dissolved by this Court or extended for good cause.  A hearing is set for December 13, 2022 at 2:00 p.m. to hear evidence and argument as to whether this Temporary Restraining Order should be converted into a preliminary injunction under applicable law.

IT IS FURTHER ORDERED that John Zink shall promptly serve Defendant Todd M. Robertson with a copy of this Order and file a certificate of service.

Dated this 9th day of December 2022.

JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE

17