IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOHN ZINK COMPANY, LLC, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 22-CV-525-JFH-MTS |
| TODD M. ROBERTSON, | ) ) ) |
| Defendant. | ) ) |

## REPORT AND RECOMMENDATION

Before the Court is Plaintiff, John Zink Company's Motion for Sanctions Against Defendant Todd M. Robertson for Willful Destruction of Evidence. (Docket No. 51). The motion was referred to the undersigned Magistrate Judge by United States Chief District Judge John F. Heil, III. (Docket No. 54). For the reasons discussed herein, the Court **RECOMMENDS** John Zink's Motion for Sanctions be **GRANTED IN PART** and **DENIED IN PART**.

## Background and Procedural History

John Zink employed Robertson as a technician from May 2006 until October 4, 2022. (Docket No. 51 at 2, 5). Upon hiring, the parties entered into an Employee Confidentiality, Invention Assignment, and Non-Solicitation Agreement ("Confidentiality Agreement"), in which Robertson agreed not to disclose the trade secrets[1] he would be given access to for employment purposes.[2] (Docket No. 51-1 at 3).

On September 9, 2022, Robertson gave notice that he was resigning, effective October 4, 2022, and would be starting a new position with Zeeco, Inc. ("Zeeco"), one of John Zink's main

---

[1] John Zink's trade secrets include inspection checklists, inspection and test plans, burner pictures, burner performance data, burner performance curves, burner startup checklist, wiring diagrams, job specific data for customers, job site pictures, and burner drawings. (Docket No. 51 at 4).

[2] "Employee will maintain the confidentiality and secrecy of all trade secrets . . . during and after his or her employment with the Company, and he or she will neither disclose, duplicate nor use, directly or indirectly, any such trade secrets . . . ." (Docket No. 51-1 at 2).

competitors. (Docket No. 51 at 2, 5). After his departure, John Zink's IT personnel discovered that Robertson downloaded 944 files from his work-issued laptop onto his own USB device the day before he left. *Id.* at 5. Many of these files allegedly contained trade secrets. *Id.*

On November 17, 2022, Robertson received a letter demanding he preserve and not destroy any electronically stored information ("ESI") belonging to John Zink. *Id.* at 6. The letter stated in part:

> [B]y this letter we are providing you with notice of your *obligation to preserve evidence relevant to John Zink's claims*. This means you must preserve and not destroy all hard-copy information and electronically-stored information relating to this matter, including relating to your employment with John Zink, your theft of John Zink trade secrets, confidential information, or proprietary information, and any other wrongful acts you have committed.

(Docket No. 51-2 at 4) (emphasis added).

On December 2, 2022, John Zink filed suit against Robertson alleging misappropriation of trade secrets in violation of both the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*, and the Oklahoma Uniform Trade Secrets Act, 78 Okla. Stat. § 85, *et seq.*, misappropriation of intangible property, breach of contract, and breach of fiduciary duty. (Docket No. 2). As part of the suit, John Zink requested the Court enter a temporary restraining order ("TRO") prohibiting Robertson from deleting any ESI on any of his devices pending inspection. (Docket No. 6).

On December 9, 2022, the District Court entered its Opinion and Order granting John Zink's Motion for TRO. (Docket No. 12). The District Court ordered that:

> Defendant Todd M. Robertson shall: (1) Refrain, cease, and desist immediately from using or disclosing any trade secrets or confidential information belonging to John Zink; and (2) *Preserve for use* in this matter all documents (in hard copy or electronic format) and all electronic devices, drives, cloud drives, computers, memory sticks or other machines upon which John Zink's property now resides or ever resided.

*Id.* at 17 (emphasis added). John Zink served Robertson with a copy of the TRO on December 9, 2022. (Docket No. 51-5 at 2).

After the TRO was entered, the parties entered into an agreement wherein Robertson agreed to turn over all electronic devices to John Zink for the express purpose of determining whether any confidential trade secrets resided on any of the devices. (Docket No. 56 at 3-4). John Zink retained Avansic, Inc. ("Avansic"), a third-party company providing e-discovery and digital forensics services. (Docket No. 51 at 1). The forensic examination revealed that Robertson possessed, and later deleted, a number of files that appeared to be work-related from a desktop computer located in Robertson's home. (Docket No. 51-3 at 9). Avansic also found evidence that files were deleted on December 10, 2022, the day after the TRO was entered and served on Robertson. *Id.* at 9-10. Moreover, Avansic identified the installation and use of deletion and recovery software on December 8 and December 13, 2022. *Id.* at 9.

John Zink brings this motion claiming Robertson willfully deleted files from his home computer in violation of the TRO. John Zink argues that the demand letter, the filing of the instant lawsuit, and the TRO placed Robertson on notice that he was not to delete any ESI on any of his devices. (Docket No. 51 at 9-11). John Zink further claims that it has been prejudiced as it will be unable to show the files contained trade secret information. *Id.* at 11. John Zink maintains the timing of Robertson's deletions indicate intentional conduct constituting bad faith. *Id.* at 13. John Zink requests the Court impose sanctions against Robertson including: entry of judgment against Robertson; an adverse inference jury instruction at trial; and an award of attorney's fees and costs. *Id.* at 1.

In his Response in Opposition to John Zink's Motion for Sanctions, Robertson admits he deleted the files and further admits that he downloaded two computer programs specifically

3

designed to permanently delete files. However, he denies acting in bad faith. (Docket No. 56 at 10). Instead, he claims that he believed the TRO only applied to the files on the USB drive, not the files on his home computer. He claims that he utilized the computer programs to permanently delete John Zink computer files as he knew John Zink would not want him to possess any work-related files on his home computer. Robertson asserts that John Zink was not prejudiced because the content of the deleted files is available to John Zink given the files were their own. (Docket No. 56 at 11). Finally, Robertson contends that all three of the proposed sanctions are unnecessary because he acted with a "pure heart and empty head." *Id.*

### Evidentiary Hearing

On July 19, 2023, the undersigned held an evidentiary hearing on John Zink's motion, at which both parties were present. (Docket No. 57). John Zink presented two witnesses: Lance Watson ("Watson"), Vice President and Chief Operating Officer of Avansic, who performed a forensic investigation of certain data devices associated with Robertson[3]; and Milton Borchard ("Borchard"), a field service manager for John Zink and former supervisor of Robertson.

John Zink offered Watson's testimony to further explain the Avansic reports and to establish Robertson's willful destruction of evidence. (Hearing Ex. 3 – admitted at hearing; Docket No. 51-3). Avansic conducted a forensic computer analysis based upon John Zink's concern that Robertson's personal devices contained its proprietary and trade secret information. Robertson provided USB devices to the general counsel of Zeeco, who then turned them over to Avansic.[4] After determining that one of the provided USB devices was a close match to a file list provided by John Zink, Avansic created a list of filenames, which contained approximately 29,000 terms, to

---

[3] At the hearing, Robertson stipulated that Watson is an expert in the field of computer forensics.

[4] In the declaration attached to his response to John Zink's motion, Robertson explained that after the lawsuit was filed, he turned over three USB devices to counsel for Zeeco "for safekeeping." (Docket No. 56-3 at 1).

search Robertson's personal devices. (Hearing Ex. 3 at 11; Docket No. 51-3 at 17). John Zink's counsel represented to Avansic that the information on the USB device contained John Zink's work-related material.

Avansic prepared two reports for John Zink. The first was the Investigation Report (Hearing Ex. 3 at 3-9; Docket No. 51-3 at 8-14), which details Avansic's efforts in locating certain files on Robertson's personal desktop computer (labeled as Item #001A in Avansic's reports). The second was the Wiping Report (Hearing Ex. 3 at 10-15; Docket No. 51-3 at 16-21), which details the steps utilized in wiping the data and the disposition of the data after completion of the analysis. The Wiping Report identified all of Robertson's personal devices provided to Avansic, including the USB device (labeled as Item # 006A in Avansic's reports).

Watson testified Avansic searched Robertson's desktop to determine what files existed and whether he attempted to remove files, including the use of data deletion software. Avansic determined Robertson downloaded two programs, "SDelete" and "Recuva." Watson described "SDelete" as a program that performs secure deletion, *i.e.*, removes a file and makes it nonrecoverable, and when used, the filename is accessible, but the file's content is not. He described "Recuva" as a program utilized to recover deleted materials and to double check whether deletion software successfully worked. Robertson downloaded and used "SDelete" on December 8, 2022, and "Recuva" on December 13, 2022. (Hearing Ex. 3 at 4; Docket No. 51-3 at 9).

Avansic also located the cloud storage application OneDrive on the desktop and determined there were thirteen filename matches to the list of filenames created from the USB device, which were likely copied to/created on the desktop from November 21, 2022, to December 8, 2022. Avansic located a OneDrive sync folder, which included 27,586 files, with many of them "potentially" including work-related data. Avansic could not analyze the file content, but it did

observe filenames similar to the filenames contained on the USB device. It determined that all but five of the files in the OneDrive folder were potentially deleted between November 12, 2022, and December 8, 2022. (Hearing Ex. 3 at 3-4; Docket No. 51-3 at 8-9).

Avansic further analyzed the Recycle Bin on Robertson's desktop to identify the items in the Recycle Bin and/or what items were removed. If emptied, the items in the Recycle Bin are no longer recoverable. Artifacts, such as a filename, may remain, but once emptied from the Recycle Bin, a file's content cannot be accessed. Although Avansic determined that 199 of the files deleted from the Recycle Bin had a matching filename to those contained on the USB device, it could not confirm the content of the files. (Hearing Ex. 3 at 4; Docket No. 51-3 at 9).

The Recycle Bin analysis also revealed another 17,231 deleted files. The files did not have a direct hit with the filenames/terms created from the USB device, but the vast majority of the 17,231 files were in a folder labeled "John Zink." Avansic could not determine the source of the deleted files, nor could it access their content. Because John Zink did not request that Avansic analyze devices other than Robertson's, it was possible the deleted files were accessible in another medium maintained by John Zink. The majority of the files deleted from the Recycle Bin were deleted on December 10, 2022. (Hearing Ex. 3 at 4-5; Docket No. 51-3 at 9-10).

Upon inquiry by this Court, Watson testified there is filename overlap between the 17,231 deleted files from the Recycle Bin and the 27,586 deleted files in the OneDrive folder. He acknowledged the 27,586 deleted files include a variety of files, not all John Zink's files, but Avansic could not determine the content overlap. He testified the vast majority of the files deleted from Robertson's desktop are not located on the USB device. Watson also acknowledged that Robertson provided an annotated version of the search results spreadsheet, indicating that hundreds of the files were personal to Robertson and had nothing to do with John Zink.

6

John Zink offered Borchard's testimony to further explain how Robertson's employment with John Zink ended. Borchard testified Robertson and several others left their employment with John Zink because of a change in the company's pension plan. Borchard spoke to Robertson prior to Robertson's departure in October of 2022, about possibly returning to employment with John Zink in the future as either a direct employee or a contractor. He perceived that Robertson wanted to return, and he wanted Robertson to return.

After discussions with John Zink's legal and human resources department, it was determined that under the pension rules, Robertson would not be eligible to return in the future. Prior to Robertson ending his employment with John Zink in October of 2022, Borchard verbally conveyed the information to Robertson. Moreover, he explicitly warned Robertson that he should not copy or retain any of John Zink's files, or John Zink will probably "come after you."

## Discussion

"A spoliation sanction is proper where: '(1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence.'" *Jones v. Norton*, 809 F.3d 564, 580 (10th Cir. 2015) (quoting *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1149 (10th Cir. 2009)). However, when seeking a more severe sanction, such as the entry of default or the imposition of an adverse inference, the movant must also make a showing of bad faith. *Sappington v. Rogers Cty. Bd. of Cty. Comm'rs*, No. 18-cv-00423-JFH-JFJ, 2020 WL 6785102, at *2 (N.D. Okla. Nov. 18, 2020) (quoting *Norton*, 809 F.3d at 580). "Mere negligence in losing or destroying records is not enough because it does not support an inference of consciousness of a weak case." *Turner*, 563 F.3d at 1149 (quoting *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir. 1997)). If the movant successfully shows that the party acted in bad faith, there is an inference "that production of the

7

document would have been unfavorable to the party responsible for its destruction[.]" *Aramburu*, 112 F.3d at 1407.

### A. Robertson's Duty to Preserve and Violation of the Court's Order

There is no question Robertson knew he had a duty to preserve ESI on his desktop computer. The November 17, 2022, demand letter explicitly stated that he was to preserve all ESI " . . . presently located on . . . a freestanding computer or laptop." (Docket No. 51-2). The Complaint filed on December 2, 2022, explicitly stated that John Zink was seeking the return of all ESI located on " . . . any and all devices capable of performing computing functions." (Docket No. 2). Finally, the TRO filed on December 9, 2022, explicitly stated that Robertson was to preserve all ESI located on "all electronic devices, drives, cloud drives, computers . . . ." (Docket No. 12). There is no question that Robertson willfully violated the District Court's order. Accordingly, this Court will address John Zink's request for spoliation sanctions under Federal Rule of Civil Procedure 16(f).

### B. Sanctions under Fed. R. Civ. P. 16(f)

Federal Rule of Civil Procedure 16(f)(1)(C) authorizes a court, "[o]n motion *or on its own*," to impose sanctions, "including those authorized by Rule 37(b)(2)(A)(ii)-(vii)" on a party or attorney who "fails to obey a scheduling *or other pretrial order*." Fed. R. Civ. P. 16(f)(1)(C) (emphasis added). Federal Rule 37(b)(2)(A)(ii)-(vii) allows for court orders "(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; (vi) rendering a default judgment against the disobedient party; or (vii) treating as contempt of

8

court the failure to obey any order except an order to submit to a physical or mental examination." Fed. R. Civ. P. 37(b)(2)(A)(ii)-(vii).

In addition to an adverse inference jury instruction and attorney's fees and costs, John Zink seeks an entry of judgment against Robertson. When determining which sanctions are appropriate under Rule 16(f), this Court considers the following factors: (1) the degree of actual prejudice to the non-offending party; (2) the amount of interference with the judicial process; (3) the culpability of the offending party; (4) whether the court warned the party in advance that noncompliance would likely result in an entry of judgment against the party; and (5) the efficacy of lesser sanctions. *Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992). A default judgment is "an extreme sanction," and is appropriate "[o]nly when the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits[.]" *Id*.

### a. Degree of Actual Prejudice to the Non-Offending Party.

Regarding the prejudice factor, John Zink argues Robertson's deletion of John Zink's files from his desktop computer is prejudicial to its ability to prove its claims at trial. Even though Plaintiff possesses the filenames of the deleted files, due to the manner in which Robertson deleted the files on his desktop computer, it is impossible for John Zink to verify with certainty the content of those files to determine whether they contain trade secrets. Additionally, John Zink has suffered financial prejudice related to the expense, time, and effort associated with Avansic's analysis of the desktop, and will likely incur additional expense in the future as a result of Robertson's conduct. The Court therefore finds the prejudice factor weighs in favor of the imposition of default judgment against Robertson.

b. **Amount of Interference with the Judicial Process.**

Considering the second factor, interference with the judicial process, there is no question Robertson violated the District Court's order to preserve the exact type of evidence he deleted from his desktop. Robertson has, however, cooperated with John Zink to some degree by providing his personal devices and by helping John Zink determine what deleted information was Robertson's personal information. In any event, Robertson's conduct in this matter and his violation of the District Court's order weigh in favor of the imposition of default judgment against him.

c. **Culpability of the Offending Party.**

The culpability factor requires a determination of whether Robertson acted with bad faith. The Court finds he did. Robertson downloaded files on the USB device the day before his employment with John Zink ended, even though he was subject to a Confidentiality Agreement and had been warned by Borchard not to copy or retain John Zink's files. Moreover, Robertson does not dispute that he intentionally deleted the files as detailed by the Avansic reports, nor did he dispute the timing of his conduct. Further, Robertson deleted the files even though he was repeatedly made aware of his obligation to preserve such evidence – John Zink's demand letter, the filing of the lawsuit, and again when the District Court entered the order granting John Zink's TRO. Thus, based upon the evidence, the Court finds the culpability factor weighs in favor of the imposition of default judgment against Robertson.

d. **Warning of Dismissal for Non-Compliance.**

The fourth factor requires the Court to consider whether Robertson was warned of the potential for default judgment for violating the District Court's order. Although the District Court's order did not explicitly set forth any consequences against Robertson for violating the

order, the lack of a warning "is not a prerequisite" to the entry of default judgment. *Garcia v. Berkshire Life Ins. Co. of Am.*, 569 F.3d 1174, 1180 (10th Cir. 2009) (citing *Archibeque v. Atchison, Topeka & Santa Fe Ry. Co.*, 70 F.3d 1172, 1175 (10th Cir. 1995)) ("The fact that Appellant was not warned of the imminent dismissal . . . does not undermine the court's consideration of the remaining [*Ehrenhaus*] factors[.]"); *see also Ehrenhaus*, 965 F.2d at 921 ("These factors do not constitute a rigid test; rather they represent criteria for the district court to consider prior to imposing dismissal as a sanction."). Thus, the Court finds that in light of the other *Ehrenhaus* factors, the lack of warning to Robertson does not weigh against the imposition of default judgment against him.

### e. Efficacy of Lesser Sanctions.

Finally, the fifth factor requires the Court to consider the efficacy of lesser sanctions to address Robertson's violation and to deter any future misconduct. The Court has considered whether lesser sanctions would be effective and concludes that Robertson's conduct, the prejudice to John Zink, and the violation of the District Court's order warrants the severe sanction of default judgment against Robertson based upon the *Ehrenhaus* factors. *Philips Elecs. N. Am. Corp. v. BC Tech.*, 773 F. Supp. 2d 1149, 1158 (D. Utah 2011) ("Willful spoliation of evidence deserves the harshest sanctions because it is antithetical to our system of justice."). Thus, the Court finds the aggravating factors in this case outweigh "the judicial system's strong predisposition to resolve cases on their merits" and recommends that default judgment be entered against Robertson on all of John Zink's claims. *Ehrenhaus*, 965 F.2d at 921.

### Conclusion and Recommendation

Based upon the authorities relied upon herein, the undersigned United States Magistrate Judge **RECOMMENDS** that the Motion for Sanctions be **GRANTED IN PART** and **DENIED**

**IN PART**. (Docket No. 51). It is further **RECOMMENDED** that John Zink's request for the entry of default judgment be **GRANTED**.

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b)(2), a party may file specific written objections to this Report and Recommendation within 14 days. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma on or before August 17, 2023. If specific written objections are timely filed, Rule 72(b)(3) directs the district judge to:

> determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate with instructions.

*Id.*; *see also* 28 U.S.C. § 636(b)(1). The Tenth Circuit has adopted a "firm waiver rule," which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions." *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for de novo review by the district court or for appellate review.

DATED this 3rd day of August, 2023.

_____
MARK T. STEELE, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT