IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

JOHN ZINK COMPANY, LLC

                **Plaintiff,**

v.

TODD M. ROBERTSON,

                **Defendant.**

Case No. 22-CV-525-JFH-MTS

## OPINION AND ORDER

Before the Court is the Report and Recommendation [Dkt. No. 60] ("Report") issued by United States Magistrate Judge Mark T. Steele recommending that the Motion for Sanctions [Dkt. No. 51] ("Motion") filed by Plaintiff John Zink Company, LLC ("Plaintiff") be granted in part and denied in part and that Plaintiff's request for entry of default judgment be granted. Defendant Todd M. Robertson ("Defendant") objects to the Report [Dkt. No. 62], and Plaintiff has filed a Response to that Objection [Dkt. No. 65]. This Court has considered the Report, Objection, Response, and the authorities cited therein, as well as the transcript of the proceeding before the Magistrate Judge and the evidence presented during that proceeding. Following its *de novo* review, the Court accepts the Magistrate Judge's conclusion that Defendant has violated this Court's orders and that the entry of default judgment is warranted based on the facts of this case. Accordingly, Defendant's Objection [Dkt. No. 62] is OVERRULED, and the Court ADOPTS the Magistrate Judge's Report and Recommendation [Dkt. No. 60]. Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the Court RETURNS this matter to the Magistrate Judge for a determination of damages.

I.      BACKGROUND

In May 2006, Defendant began working for Plaintiff as a Thermal Oxidizer Service Technician. Dkt. No. 51 at 2. At or around the time he was hired, Defendant signed an Employee Confidentiality, Invention Assignment and Non-Solicitation Agreement ("Agreement"), in which Defendant agreed that he would maintain the confidentiality of all trade secrets, confidential information, and proprietary information belonging to Plaintiff ("Plaintiff's Information"), that all documents and items containing Plaintiff's Information or related to Plaintiff's business belonged solely to Plaintiff, and that Defendant would deliver all such documents and items to Plaintiff "upon termination of [Defendant's] employment with [Plaintiff]." *Id.* at 3; Dkt. No. 51-1 at 2-3. Although Defendant's position changed during his 16-year employment with Plaintiff [Dkt. No. 51 at 4], there is no dispute that the Agreement remained in force throughout Defendant's tenure as a John Zink employee.

In the fall of 2022, several of Plaintiff's more experienced employees opted to resign or retire due to a change in Plaintiff's pension program. Defendant was one of them. Dkt. No. 51 at 5; Dkt. No. 56 at 5; Dkt. No. 56-9 at 1, 3-5; Dkt. No. 75 at 43. Initially, Defendant hoped to return to work for Plaintiff, either as an employee or as a contractor. Dkt. No. 56-9 at 3-5; Dkt. No. 75 at 43-44. Failing that, Defendant had plans to begin working for Zeeco, Inc. ("Zeeco"), one of Defendant's primary competitors. Dkt. No. 2 at 4-5, 9-10; Dkt. No. 6-3; Dkt. No. 6-5; Dkt. No. 75 at 42-43. Defendant discussed his plans to work for Zeeco with a colleague, Milton Borchard. Mr. Borchard advised Defendant not to take copy or retain any files belonging to Plaintiff, because Plaintiff would "probably come after [Defendant]" if he did so. Dkt. No. 75 at 44.

When Plaintiff discovered Defendant's intent to work for Zeeco, his departure date was "accelerated." Dkt. No. 56 at 6. On October 3, 2022, the second to last day of his employment,

2

Defendant downloaded at least 944 files (the "Files") from his work computer to a removable storage device (the "USB"). Dkt. No. 6-5 at 2; Dkt. No. 56 at 6; Dkt. No. 56-9 at 6. Plaintiff discovered the misappropriation at the end of October 2022, and sent Defendant a demand letter ("Letter") insisting that Defendant, among other things, immediately return any property belonging to Defendant, allow for a forensic examination of all devices on which Defendant's confidential information and trade secrets had been stored, and provide a list detailing his use of Defendant's confidential information and trade secrets. Dkt. No. 51 at 6; Dkt. No. 51-2; Dkt. No. 11-2 at 4. The Letter advised Defendant that he was obligated to preserve all evidence relevant to Plaintiff's misappropriation claims and directed Defendant to preserve all hard-copy and electronically stored information concerning Defendant's employment and Defendant's misappropriation. Dkt. No. 11-2 at 4-5.

When Defendant failed to respond to the Letter, Plaintiff initiated this action. Dkt. No. 2. Defendant was served with copies of both a Complaint and a Motion for Temporary Restraining Order on December 3, 2022. Dkt. No. 2; Dkt. No. 6; Dkt. No. 51-4; Dkt. No. 51-5. On December 9, 2022, this Court issued a Temporary Restraining Order ("Order") directing Defendant to (1) refrain from using or disclosing confidential information and trade secrets, and (2) "[p]reserve for use in this matter all documents (in hard copy or electronic format) and all electronic devices, drives, cloud drives, computers, memory sticks or other machines" upon which Plaintiff's property was or had been stored. Dkt. No. 12 at 17. Defendant was served with a copy of the Order on the day it was issued. Dkt. No. 51-5.

Defendant obtained counsel on December 12, 2023, and the parties agreed to postpone a hearing on the Order in exchange for Defendant's agreement to allow Plaintiff access to all electronic devices and storage accounts within his possession and control, as well as any devices

3

at Zeeco where he had plugged in his removable storage drive or shared any John Zink information. Dkt. No. 56 at 3.[1] Defendant also agreed to produce those devices for forensic examination by Plaintiff's expert, Lance Watson of Avansic, Inc. ("Avansic").[2] *Id.* Several items, including Defendant's personal computer and a USB produced by Zeeco,[3] were provided for inspection.

Plaintiff received the results of Avansic's analysis in June of 2023. Using the USB provided by Zeeco as a starting point, Avansic found evidence that the desktop computer controlled by Defendant contained thirteen files with names that matched those on the USB, and that those files were copied to the computer between November 12 and December 8, 2022. Dkt. No. 75 at 31-33. The expert further noted that 27,586 files had been stored on a OneDrive sync folder controlled by Defendant, and that "many" of those files were work-related because they had file names similar to the files on the USB. *Id.* at 33-34. Of the 27,586 files that had been stored on the OneDrive, all but five were deleted between November 12, 2022 and December 8, 2022. *Id.* at 34-35; Dkt. No. 51-3 at 9.

Avansic also found evidence of approximately 17,231 files that had been deleted through the Recycle Bin on Defendant's personal computer. Dkt. No. 75 at 27-28. Of those, 199 were identical in name to files contained on the USB. *Id.* The "vast majority" of the remaining files had resided in a subfolder named "John Zink\*" when they were active on Defendant's personal

---

[1] The TRO was extended by the parties' agreement to permit the review of these devices. Dkt. Nos. 19, 21, 24, 25, 28, 29, 32, 33, 36, 37, 40, 41, 45, 46. On each occasion, Plaintiff represented that Defendant agreed to preserve for use in this matter all documents, whether hard copy or electronic, and all devices, drives, computers, memory sticks, or other machines on which Plaintiff's property resided or had ever resided. Dkt. Nos. 19, 24, 28, 32, 36, 40, 45.

[2] There was no objection to Mr. Watson's expertise or his qualifications as an expert. Dkt. No. 75 at 12.

[3] The USB was delivered to Avansic by counsel for Zeeco. Dkt. No. 75 at 19-20. Defendant did not dispute that the USB was initially delivered to Zeeco by Defendant. *Id.*

4

computer. *Id.* at 28-29; Dkt. No. 51-3 at 9. Most of the files deleted through the Recycle Bin were deleted on December 10, 2022. Dkt. No. 75 at 40; Dkt. No. 51-3 at 3.

Avansic performed an analysis to determine whether any software had been installed or used to remove content from Defendant's personal computer. Dkt. No. 75 at 22. Avansic discovered that the program "SDelete"—a software wiping tool—had been downloaded on December 8, 2022, and accessed that same day. *Id.* at 24-25; Dkt. No. 51-3 at 9. Avansic represented that the access times corresponded to the timestamp of the deletions from Defendant's OneDrive Folder. Dkt. No. 51-3 at 9. In addition, Avansic found evidence that the program "Recuva," a program used to recover deleted data and determine if deleted data is recoverable, had been installed on Defendant's personal computer on December 13, 2022. Dkt. No. 75 at 26; Dkt. No. 51-3 at 9. The program had been uninstalled by the time Avansic performed its analysis. Dkt. No. 51-3 at 9.

Plaintiff provided Defendant with a copy of Avansic's forensic report on June 12, 2023, and advised Defendant of its intention to seek sanctions based on the report. Dkt. No. 56 at 4; Dkt. No. 56-6; Dkt. No. 56-7. In response, Defendant acknowledged that he had possessed and used files belonging to John Zink on both USB drives and his home computer during his career with Plaintiff, and that he copied files prior to his departure from the company because he hoped to come back to work for Plaintiff in a post-retirement capacity. Dkt. No. 56 at 5-6; Dkt. No. 56-9 at 2-3. Defendant further admitted that, when he received the Letter, he deleted "John Zink files" from his personal computer because it had become clear that he would not be returning to John Zink as an employee. Dkt. No. 56 at 6; Dkt. No. 56-9 at 5.

Plaintiff filed its Motion asking this Court for sanctions up to and including dismissal due to Defendant's destruction of the evidence contained on his personal computer. According to

Plaintiff, the sanction of dismissal is warranted because Plaintiff is irreparably prejudiced by Defendant's willful destruction of electronic files that Defendant knew it had a duty to preserve. Dkt. No. 51 at 11-13. Defendant, in response, argues that the extreme sanctions proposed by Plaintiff are not appropriate because Plaintiff was not actually prejudiced by the deletion, and Defendant's conduct, while misguided, does not rise to the level of willful destruction of evidence. Dkt. No. 56 at 9-12. The Motion was referred to the Magistrate Judge who, after reviewing the evidence presented in the parties' briefs and holding an evidentiary hearing, recommended that the Motion be granted in part, and that Plaintiff's request for default judgment be granted pursuant to Rule 16 of the Federal Rules of Civil Procedure. Dkt. No. 60 at 8-12.

## II.     ANALYSIS

In his timely objections to the Magistrate Judge's Report, Defendant argues the Report should not be adopted because (1) Plaintiff made no reference to either *Ehrenhaus v. Reynolds* or Rules 16 and Rule 37 of the Federal Rules of Civil Procedure in its Motion; (2) the facts do not establish that Plaintiff was prejudiced from Defendant's conduct; (3) the facts do not support the finding that Defendant acted willfully or in bad faith; and (4) the *Ehrenhaus* factors do not, taken as a whole, justify the extreme sanction of dismissal. Dkt. No. 62 at 1-2. This Court undertakes a *de novo* determination of these objections, and is free to receive further evidence, recommit the matter to the Magistrate Judge with instructions, or accept, reject, or modify the Magistrate Judge's Report and Recommendation. 28 U.S.C. § 636(b)(1).

### A. Waiver

The Court first considers Defendant's assertion that Plaintiff failed to make an adequate argument in support of its request for default judgment. According to Defendant, Plaintiff's purported failure to specifically reference *Ehrenhaus v. Reynolds*, 965 F.2d 916 (10th Cir.1992),

6

or explain why the harsh sanction of dismissal was warranted in view of the *Ehrenhaus* factors constitutes waiver and precludes the entry of default judgment. Dkt. No. 62 at 2-3.

The Court disagrees. Plaintiff specifically requested the remedy of default judgment as a sanction. Dkt. No. 51 at 1. Plaintiff further argued that sanctions, up to and including dismissal, should be entered because Defendant intentionally caused prejudice to Plaintiff by destroying evidence that he had a duty to preserve. *Id.* at 9-13. This case is therefore distinguishable from the cases cited by Defendant, where the moving parties either failed to raise an issue or made only cursory statements "without supporting analysis and case law." *Bronson v. Swensen*, 500 F.3d 1099, 1104-05 (10th Cir. 2007) (refusing to address constitutionality of civil prohibition where the opening brief was "dedicated entirely to establishing the invalidity of [the state's] criminal prohibition"); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 675 (10th Cir. 1998) (declining to address issue of retaliation where the plaintiff failed to "raise [or] support" that argument in the trial proceedings). Although Plaintiff did not specifically reference the name *Ehrenhaus*, it did raise factors pertinent to the *Ehrenhaus* analysis,[4] argued that those factors warranted dismissal, and cited case law applying the *Ehrenhaus* factors when awarding sanctions for spoliation. *See Philips Elecs. N. Am. Corp. v. BC Tech.*, 773 F. Supp. 2d 1149, 1210 (D. Utah 2011) (applying *Ehrenhaus* factors when determining the correct sanction); Dkt. No. 51 at 13 (citing *Philips* and arguing that the "timing of the deletions and the number of deletions . . . support a finding of

---

[4] Notably, the factors identified in *Ehrenhaus* are not exhaustive, and not every factor will apply in every case. Although a court should "ordinarily" consider the five factors set forth in that case, "[tho]se factors do not constitute a rigid test; rather, they represent criteria for the district court to consider prior to imposing dismissal as a sanction." *Ehrenhaus*, 965 F.2d at 921. "Not every case will require the district court's evaluation of all the *Ehrenhaus* criteria . . . since 'often some of these factors will take on more importance tha[n] others.'" *Anaeme v. FHP of New Mexico*, 201 F.3d 447 (10th Cir. 1999) (quoting *Archibeque v. Atchison, Topeka & Santa Fe Ry.*, 70 F.3d 1172, 1175 (10th Cir. 1995)).

sanctions"). Plaintiff adequately raised the argument that dismissal was an appropriate sanction in this case.

Even if Plaintiff had waived the argument seeking dismissal (and it did not), such waiver would be immaterial to the question of whether sanctions may be imposed pursuant to Rule 16 of the Federal Rule of Civil Procedure. As the Magistrate Judge correctly noted, Rule 16 authorizes a court to impose sanctions "on its own" when a party fails to obey a pretrial order. *See* Fed. R. Civ. P. 16(f)(1)(C). Thus, this Court is authorized to impose any sanctions listed in Rule 37(b)(2)(A)(ii) through (vii) of the Federal Rules of Civil Procedure, including dismissal and default judgment, regardless of whether Plaintiff requested such relief by motion. *See* Fed. R. Civ. P. 16(f)(1)(C); Fed. R. Civ. P. 37(b)(2)(A)(ii)-(vii). For the reasons discussed *infra*, the Court would find the imposition of the recommended sanctions appropriate under Rule 16 regardless of whether the question of sanctions was brought by motion.

### B. Prejudice

Defendant next objects that sanctions are not warranted because there is no evidence that Plaintiff has suffered actual prejudice because the files Defendant "are not specifically related to Plaintiff's claim." Dkt. No. 62 at 3. In support of this argument. Defendant submits his own testimony that the files he deleted were "older," were copied to his home computer "in the ordinary course of his many years of employment," and were only on his computer "for the purpose of his rendition of service to Plaintiff and its customers." *Id.* at 4. Defendant insists that, because the files on his computer were different from the ones on the USB, he did not destroy anything specifically related to Plaintiff's claims regarding the use of a thumb drive to improperly download 944 files. *Id.* at 3. He further contends that there is no prejudice to Plaintiff in terms of loss of

data, because all of the documents he deleted are "otherwise backed up" on Plaintiff's other work computers. *Id.* at 4.

In raising these arguments, Defendant asks the Court to accept his characterization of what the destroyed evidence contained, where the destroyed evidence came from, and whether Plaintiff still has access to the deleted information. Unfortunately, there is no evidence to support Defendant's characterization because Defendant destroyed the electronic documents that could have confirmed (or refuted) his claims. But for Defendant's conduct, the finder of fact could review metadata associated with the now-deleted files, the contents of the now-deleted files, and expert testimony concerning those files when determining whether and when the files had been copied, exported to a third party, or modified. *See* Dkt. No. 75 at 23-27. Further, Plaintiff would have the opportunity to compare the now-deleted files with its own records to ensure nothing had been lost, and to confront Defendant with the evidence associated with the download, access, and modification dates of the now-deleted files.

As a result of Defendant's disregard of the preservation notices and this Court's Order, Plaintiff cannot determine whether the deleted items provide support for its claims of misappropriation. *E.g., Philips Elecs.*, 773 F. Supp. 2d at 1201 (recognizing that the destruction of documents held on the defendant's computer, including proprietary files obtained from the plaintiff, deprived the plaintiff of the opportunity to review the documents for evidence in support of its claims of misappropriation). Further, Plaintiff cannot challenge Defendant's characterization of the contents of the deleted documents. *E.g., id.* (concluding that, where the witnesses who engaged in the deletions lacked credibility, it was "difficult to trust that the alleged replacement files and folders are the same files and folders that were deleted from the five laptops"). But for Defendant's conduct, Plaintiff could have independently examined the deleted materials and cross-

examined Defendant based on the contents of those materials. Plaintiff's inability to do so constitutes prejudice.

Contrary to Defendant's assertions, this is not a case where Plaintiff has "failed to articulate what [the deleted evidence] would have shown and how it would have been relevant to the claims or defenses in this case." *Herrmann v. Rain Link, Inc.*, No. 11-1123-RDR, 2013 WL 4028759, at *3 (D. Kan. Aug. 7, 2013); Dkt. No. 62 at 3 (citing *Hermann*). To the contrary, Plaintiff has introduced evidence that files deleted from the Recycle Bin—the majority of which were deleted on December 10, 2022—were housed in a file labelled "John Zink" prior to deletion. Dkt. No. 29 29:21-25. And Defendant himself acknowledged that the deleted files contained John Zink's information. Dkt. No. 56 at 6. Evidence concerning the John Zink files maintained on Defendant's personal computer, as well as the ESI demonstrating what Defendant did with those files, would certainly be relevant to Plaintiff's claim that Defendant willfully misappropriated Plaintiff's proprietary business information and failed to abide by the terms of the Agreement.[5] Dkt. No. 2 at 15.

Nor is this a case where the deleted information is easily obtained from alternative sources, as suggested by Defendant. *Cf. Turner v. Pub. Serv. Co. of Colorado*, 563 F.3d 1136, 1150 (10th

---

[5] The Court rejects Defendant's argument that the "deleted files from the home desktop computer are not specifically related to Plaintiff's claim," because they were not part of the "files on the [USB] drive." Dkt. No. 62 at 2-3. Even if Plaintiff's claims were limited to the specific files identified in the Complaint, that would not preclude the discovery and production of other John Zink files in Defendant's possession for purposes of defining the contours of Plaintiff's claims. *See Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995) (recognizing that "discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues") (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). Further, an examination of Plaintiff's Complaint demonstrates that Plaintiff is seeking relief not solely for the misappropriation of specific documents, but for Defendant's misappropriation of business information as a general matter, as well as his breach of his Agreement with Plaintiff. Dkt. No. 2 at 15; *id.* at 16 (alleging that "Robertson has not returned Plaintiff's property as required on termination under the [Agreement]").

Cir. 2009) (concluding that, where the plaintiff had access to documentary evidence concerning her performance in an interview, the loss of the interview notes was minimally prejudicial); Dkt. No. 62 at 3 (citing *Turner*). There is no evidence, other than Defendant's speculation, that Plaintiff has copies of the deleted files in its possession. Furthermore, even if Plaintiff could use the limited data it has to find copies of each and every deleted file (and there is no evidence that Plaintiff could do so), Plaintiff cannot recreate the ESI describing what Defendant did with the files after he copied them to his personal computer. The prejudice Plaintiff faces in being unable to determine what documents were maintained in the "John Zink" file, and what Defendant did with them, is actual, not speculative. *Cf. Linnebur v. United Tel. Ass'n, Inc.*, No. 10-1379-RDR, 2012 WL 2370110, at *3 (D. Kan. June 21, 2012) (concluding that the moving party had not established prejudiced simply by contending that "the full extent of relevant evidence" that had been destroyed "may never be known"). This prejudice is of Defendant's making, and Defendant, not Plaintiff, should bear the consequences. *Philips Elecs.*, 773 F. Supp. 2d at 1169 (recognizing that, despite the existence of an "an exact match between various file names destroyed . . . and propriety files belonging to Philips, [the] destruction of these files preclude[d] Philips from discovering the contents of all the files" and prevented Philips from discovering or understanding the full scope of the misappropriation, thereby "impeding Philips' ability to obtain evidence relevant to its claims and defenses in this case").

## C. Willfulness

For his third objection, Defendant argues that he did not act willfully or in bad faith when he deleted John Zink files from his personal computer. Defendant argues that there are "no facts" showing Defendant acted with a culpable state of mind, that it is "undisputed" that Defendant preserved the thumb drive, and that Defendant's stated reasons for deleting the files from his home computer are plausible. Dkt. No. 62 at 5-6.

The Court has reviewed Defendant's affidavit concerning his actions and motives and finds his testimony lacks credibility. Defendant did not simply delete files. He performed an initial deletion, and then a second "double" deletion from his computer's Recycle Bin—and he did this despite agreeing to deliver those materials to Plaintiff upon termination of his employment. Dkt. No. 2 at 6 (Agreement ¶ 3). Furthermore, Defendant downloaded and accessed SDelete, a program designed to render deleted documents unrecoverable, and Recuva, a program utilized to recover deleted materials and/or confirm deleted materials can no longer be recovered. Dkt. No. 75 at 24-26. Finally, when he was finished using Recuva, Defendant did not simply leave the program on his computer; it appears the program was uninstalled after it was downloaded and used on December 13, 2022. Dkt. No. 51-3 at 9. This conduct demonstrates not only a "methodical attempt to eliminate information" belonging to Plaintiff, but also an intent to prevent Plaintiff from viewing the software used in connection with the deletion. *E.g., Philips Elecs*., 773 F. Supp. 2d at 1181 (finding that the deletion of a file from three places revealed a "deliberate methodical attempt to eliminate" the information). True, Defendant did claim—after the deletions were discovered—that he simply "thought it best to . . . search for any John Zink files that may remain and delete them" from his computer once it was clear he would not return to Plaintiff as an employee. Dkt. No. 56-9 at 5. But Defendant does not explain why he chose to delete files when his Agreement

with Plaintiff required him to return them; nor does he provide any reason why he thought it necessary to remove the Recuva software from his computer after using it. The evidence of Defendant's decision to intentionally and methodically delete data he was obligated to return casts significant doubt on Defendant's post hoc justifications for his conduct. The Court declines to credit Defendant's statements regarding his intent when his actions tell a different story. The Magistrate Judge did not err in concluding what the record demonstrates: Defendant acted willfully when he deleted the John Zink files.

### D. The *Ehrenhaus* Factors

In his final objection, Defendant argues that default judgment is not warranted under *Ehrenhaus*. In support of this argument, Defendant points to (1) the lack of actual prejudice, (2) the lack of any significant harm to the judicial process, (3) Defendant's good faith, (4) the lack of any warning that default judgment would be entered if Defendant failed to abide by the terms of the Court's Order, and (5) the availability of effective lesser sanctions. Dkt. No. 62 at 6-10. Defendant urges the Court to conclude that the *Ehrenhaus* factors, taken together, do not support the extreme sanction proposed by the Magistrate Judge.

The Court has independently weighed the *Ehrenhaus* factors and concludes that the sanction of default judgment is appropriate under the facts of this case. With respect to the first and third factors, this Court finds for the reasons already discussed that Plaintiff did suffer actual and substantial prejudice, and that this prejudice was the result of Defendant's willful, intentional, and systematic deletion of evidence he had an obligation to return. *See* Sections C & D, *supra*. The first and third *Ehrenhaus* factors therefore weigh in favor of significant sanctions.

The second *Ehrenhaus* factor, the interference with the judicial process, also supports dismissal. Defendant deleted documents from his Recycle Bin on December 10, 2022, the day

after he received the Order directing him to preserve all documents, electronic devices, and computers "upon which John Zink's property now resides or ever resided." Dkt. No. 12 at 17. The Court finds that Defendant "willfully failed to comply" with that Order when he deleted documents on December 10, 2022, thereby "flout[ing] [this Court's] authority." *Ehrenhaus*, 965 F.2d at 922. Regardless of how well and willingly Defendant cooperated beginning December 13, 2022, the fact remains that he deleted relevant documents in violation of this Court's order. Parties cannot ignore this Court's Orders with impunity. To allow Defendant to avoid the consequences of his actions would undermine the administration of orderly justice. *See id.* (recognizing that, if a party is permitted to ignore orders without suffering the consequences for those actions, then [the court could not] administer orderly justice, and the result would be chaos").

With respect to the fourth and fifth factors, the Court recognizes that the lack of an express warning regarding the risk of default is not a prerequisite to the entry of default judgment as a sanction. *Garcia v. Berkshire Life Ins. Co. of Am.*, 569 F.3d 1174, 1180 (10th Cir. 2009) (citing *Archibeque v. Atchison, Topeka & Santa Fe Ry. Co.*, 70 F.3d 1172, 1175 (10th Cir. 1995)) (concluding that the lack of warning of "the imminent dismissal . . . [did] not undermine the court's consideration of the remaining [Ehrenhaus] factors"). The Court is unwilling to impose a rule restricting the entry of default judgment to those cases where parties have been given advance warning, particularly in cases, such as this one, where the party has deleted the very evidence that is the subject of the lawsuit. Nor does the Court agree that something less than dismissal is appropriate where a party willfully destroys evidence that it had a contractual obligation to preserve, then deletes the programs it used to ensure the destruction of that evidence. If ever there were a case where the party should have known, without warning, that it had an obligation to preserve the evidence that it took from the other side, it is this one. If ever there was a case where

14

default judgment is the only appropriate sanction, it is this one. The *Ehrenhaus* factors warrant default judgment against Defendant.

### III.   CONCLUSION

For the reasons discussed above, the Court finds that the entry of default judgment is appropriate in this case. Defendant's Objection to the Report and Recommendation [Dkt. No. 62] is OVERRULED, and the Court ADOPTS the Magistrate Judge's Report and Recommendation [Dkt. No. 60]. Default judgment is hereby entered in favor of Plaintiff and against Defendant.

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the Court RETURNS this matter to the Magistrate Judge for a determination of damages and attorney's fees.

Dated this 27th day of March 2024.

JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE